JUDGE WOOD

07 CV 1049

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
FEB 26 2007
LAWRENCE K. BAERMAN, CLERK
ALBANY

Herbert Burgess,
　　　　　　　Plaintiff,

— vs. —

07 -CV- 0204    COMPLAINT
　　　　　　　-cv-
LEK/DRH    JURY TRIAL DEMANDED

Brian Fischer, Robert K. Woods,
James T. Bezio, T. Ashlaw, Michael Eddy,
Louise Tichenor, Pat Johnston, Sgt. Martin,
　　　　　　　Defendants.

## PLAINTIFF'S COMPLAINT

Plaintiff Herbert Burgess #93A3237 (Plaintiff), Pro Se, for his Complaint against Defendants Superintendent Brian Fischer (Fischer), Superintendent Robert K. Woods (Woods), Assistant Deputy Inspector General James T. Bezio (Bezio), Corrections Officer T. Ashlaw (Ashlaw), Corrections Officer Michael Eddy (Eddy), Physician's Assistant Louise Tichenor (Tichenor), and Physician's Assistant Pat Johnston (Johnston); and Corrections Sergeant Sgt. Martin.

DEC 29 2006
PRO SE OFFICE

## JURISDICTION AND VENUE

1.) The Court has jurisdiction over this matter under 28 USC §§ 1331 and 1343 (3) and (4). The matters in controversy arise under 42 USC § 1983.

-1-

2.) Venue properly lies in this district pursuant to 28 USC §§ 1391 and 1392 in that a substantial, critical, and principal causing part of the events in the instant case took place at Sing Sing Correctional Facility (Sing Sing) in Ossining, New York, within the Southern District of New York.

## PARTIES

3.) Plaintiff Herbert Burgess-#93A3237 is and was at all times relevant hereto, a prisoner in the custody of the New York State Department of Correctional Services (DOCS). At the time of the events relevant hereto, Plaintiff was incarcerated at Sing Sing and Upstate Correctional Facility (Upstate) respectively. Plaintiff is currently incarcerated at Attica Correctional Facility, 639 Exchange Street, P.O. Box 149, Attica, New York 14011-0149.

4.) Defendant Brian Fischer was and at all times relevant hereto Superintendent at Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562-5442.

5.) Defendant Robert K. Woods was and at all times relevant hereto Superintendent at Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953.

6.) Defendant James T. Bezio was at all times relevant hereto a DOCS Assistant Deputy Inspector General for <u>New York State Department of Correctional Services, 1220 Washington Avenue, State Office Building Campus, Albany, New York 12226-2050</u>.

7.) Defendant T. Ashlaw is a DOCS Corrections officer who at all times relevant hereto was assigned at <u>Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953</u>.

8.) Defendant Michael Eddy is a DOCS Corrections Officer who at all times relevant hereto was assigned at <u>Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953</u>.

9.) Defendant Louise Tichenor is a DOCS Physician's Assistant who at all times relevant hereto was assigned at <u>Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953</u>.

10.) Defendant Pat Johnston is a DOCS Physician's Assistant who at all times relevant hereto was assigned at <u>Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953</u>.

11.) All Defendants are sued in their official and individual capacities.

## FACTS

12.) While Plaintiff was at Sing Sing he was denied Protective Custody (P.C.) several times by Fischer even though he knew that Plaintiff was in danger of serious harm. This resulted in Plaintiff being forced into the Disciplinary Special Housing Unit (SHU) for improper purposes by Fischer who knew that Plaintiff did not belong in SHU. While making rounds one day Fischer told Plaintiff that he was going to make some calls and make sure that Plaintiff wishes that he had not filed so many complaints at his facility.

13.) The action by Fischer resulted in a chain reaction of events of Plaintiff being continuously assaulted, threatened, and illegally confined by prison officials and other inmates because of Plaintiffs vulnerability and being labeled as a snitch because of Plaintiffs refusal to comply with extortion demands by prison officials and other inmates, and Plaintiffs filing of complaints against them. All in a coordinated, consolidated effort to cause Plaintiff harm by all Defendants in retaliation of Plaintiff's exercise of his Constitutional rights.

— 4 —

14.) The wrongful related acts upon Plaintiff by all Defendants continued to occur from when Plaintiff was at Sing Sing to Southport Correctional Facility to Upstate.

15.) Fisbher stated in his Unusual Incident Report dated 6-5-2000 that the events relating to Plaintiff's pending disciplinary charges were caused because of Protective Custody concerns

16.) Therefore, Fischer knew that severe disciplinary action against Plaintiff was improper, but Plaintiff was maliciously subjected to improper confinement in SHU without regard of this fact.

17.) In the months of June, July, and August of 2005 Eddy proceeded to plant heroin (narcotics) in Plaintiff's cell, and also was handing the same to Plaintiff in a brown paper bag during the evening meals.

18) Eddy demanded that Plaintiff stop writing grievance complaints and sell narcotics for him and other inmates whom he allowed to participate in illegal narcotics activity including selling and distribution.

—5—

19.) Plaintiff refused Eddy's demands and was threatened with harm and subsequently Eddy and other officials began writing false Misbehavior Reports on Plaintiff giving Plaintiff excessive Disciplinary SHU time and loss of good time credit; and assaulting Plaintiff and ordering and allowing other inmates to assault Plaintiff.

20.) Plaintiff reported the illegal activity in lines #17, #18, and #19 to the Drug Enforcement Administration (DEA) and to the New York State Governor, George E. Pataki (Governor) in letters to them dated July 25, 2005, turning over the narcotics to each office within the mailed letters to them, and requesting assistance.

21.) Plaintiff was subsequently assaulted by Eddy in the infirmary on August 23, 2005, resulting in further serious injury to his right wrist, which Plaintiff was being prepared to have surgery on from an existing injury.

22.) Shortly thereafter in September, 2005 or approximately that time Plaintiff was assaulted in his left eye by an inmate while an officer watched and allowed this to happen in the infirmary, resulting in permanent deformity of his orbit bone and loss of vision in his left eye, and chronic pain and headaches.

—6—

23.) On October 13, 2005 and October 14, 2005 Ashlaw intionally labeled Plaintiff as a snitch to cause Plaintiff harm by other inmates and staff while while Plaintiff was at Upstate in 11-Building on B-Gallery in 32 cell, after an interview with Sgt. Bishop and Counselor Maynard concerning Plaintiff's safety and protection.

24.) Ashlaw went through B-Gallery and told every inmate that Plaintiff "was a 'Rat' and that Plaintiff would be wagging his tail out of there because he snitched on everyone!"

25.) Plaintiff was subsequently moved to 9-Building on October 15, 2005 for his protection.

26.) Under the guise of random cell searches Eddy stole Plaintiff's postage stamps, and confiscated and disposed of Plaintiff's legal papers, notes, medical documents and copies of grievance complaints out of his cell.

27.) On March 8, 2006 Plaintiff was punched in the nose by an unknown officer while in the infirmary with such force that it resulted in serious damage to Plaintiff's nose, in retaliation for refusing to sell drugs for Eddy, filing complaints, reporting thier illegal activity to authorities, and seeking protection. Plaintiff's nose bled for 2 months straight and remains painful from a fracture.

-7-

28.) Sgt. Martin was assigned to investigate the assault, but did not investigate except only to talk to Plaintiff at his cell door. Sgt. Martin intentionally failed to appropriately investigate in order to hide identity of officer who assaulted Plaintiff.

29.) Woods failed to properly supervise the investigation to ensure that it would be done, even though he knew that the supposed investigation of the matter was bogus, in addition Plaintiff informed Woods of the inadequacy of the investigation and requested that he notify the Inspector General's Office. Woods and Sgt. Martin intentionally did not act, in deliberate disregard for Plaintiff's health and safety.

30.) Defendant Sgt. Martin is a Docs Corrections Sergeant who was at all times relevant hereto was assigned at Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953.

31.) On August 24, 2005 Bezio filed a fraudulent Misbehavior Report against Plaintiff in retaliation to Plaintiff filing complaints and grievances concerning official misconduct at Upstate, and also falsely claimed a continuing investigation which none was ever actually conducted into the serious matter that Plaintiff reported.

-8-

32.) The fraudulent Misbehavior Report was filed after Plaintiff reported illegal narcotics activity occuring at Upstate involving Eddy, other officials, and inmates to the DEA and Governor in letters dated July 25, 2005, (ref. line #20). Bezio's actions were intentional and in total disregard for Plaintiff's health and safety. Bezio had told Plaintiff he was there to investigate the illegal activity by officials, Plaintiff had reported, but he did not.

33.) Woods knew of the illegal activity and assaults but failed to take any action concerning the serious matters which endangered Plaintiff's safety, caused him harm and endangered the safety and security of the facility; and as a result Plaintiff suffered the injuries and deprivation caused by staff and inmates indicated in this complaint.

34.) Tichenor took x-rays of Plaintiff's eye injuries but failed to give Plaintiff any treatment or refer Plaintiff to see appropriate physicians for treatment even though she knew that Plaintiff's eye orbit bone was seriously fractured and vision in his left eye is lost; saying: "She's not going to refer Plaintiff anywhere because they're just going to deny it." Tichenor told Plaintiff that she was tired of his constant medical complaints.

35.) Johnston examined Plaintiff's eye orbit and found that his eye orbit was indeed fractured, and Johnston said just because the x-rays were reported as normal that it did not mean that the abnormality concerning Plaintiff's eye was normal.

36.) Johnston later told Plaintiff that there was nothing he could do about the "dent" above his eye. Plaintiff also received no treatment for his nose, which is now permanently damaged.

37.) Plaintiff has been in SHU since June of 2000 and has SHU time extended until 2012 virtually all as a result of retaliation.

38.) Plaintiff was subjected to SHU time that is grossly disproportionate to the seriousness of the offenses of Misbehavior Reports that Plaintiff received wrongfully and otherwise between 2000 and 2006 and serves no penalogical purpose. Woods refused to modify the SHU time and other sanctions even though he knew that they were extremely excessive and not penalogically justified. Woods also allowed the illegal narcotics ring to flourish unchecked.

39.) Woods has the authority under Docs Directive #4932 and 7NYCRR 254.9 to modify any SHU time and penalties at any time during the imposition of such penalties.

Extremely, excessive SHU confinement was allowed to remain in retaliation for Plaintiff filing complaints and grievances against Woods; and allowed Plaintiff to be victimized by officers and inmates.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

40.) Plaintiff exhausted his administrative remedies by filing multiple grievance complaints through the facilities grievance process and procedures where each claim occurred and appealed them to the highest level of the grievance process.

41.) Plaintiff also went beyond the grievance process by informing, reporting, and complaining to officials and authorities within and outside of the prison system.

42.) The results of all of Plaintiff's efforts at resolving the matters through the administrative process and as well as through outside law enforcement and state government officials were retaliation by staff of the prison and disregard and denial of grievances.

43.) These acts indicated in the Complaint herein represent a pattern of events demonstrating intentional retaliation against Plaintiff by all of the Defendants in this case, with a coordinated and consolidated effort to cause Plaintiff harm by assaulting Plaintiff,

—11—

causing and allowing Plaintiff to be assaulted by other inmates, denying Plaintiff medical treatment, and intentionally creating and allowing an unsafe environment by allowing and causing this to occur intentionally and participating in it including the illegal sale, possession, and distribution of illegal narcotics and other contraband in violation of Federal Criminal laws including 21 USC § 841(b)(1)(A) of the Controlled Substance Act and 21 USC § 960 Heroin Distribution; a direct contributing factor in Plaintiffs' physical and mental pain and suffering as a result.

44.) The wrongful acts by the Defendants presented in this Complaint herein in lines #12 through #43 are all in violation of Plaintiffs civil rights guaranteed by the United States Constitution including Plaintiffs <u>1st Amendment rights to seek redress of grievances</u>, by Defendants retaliation acts against Plaintiff for filing complaints, grievances, and reporting illegal activity and Federal crimes to authorities by assaulting Plaintiff, causing Plaintiff to be assaulted, and allowing him to be assaulted, intentionally losing and disposing of his grievance complaints, and taking his legal papers and copies of complaints, and notes out of his cell and disposing of them, and filing false Misbehavior Reports against Plaintiff;

—12—

Plaintiffs <u>8th Amendment rights to be free from cruel and unusual punishment</u>, by Defendants assaulting Plaintiff and causing and allowing him to be assaulted resulting in physical injuries, and physical and mental pain, denial of medical treatment for such injuries, intentional lack of protection from assault and injury, illegal and improper SHU confinement for extraordinary, excessive time, and creating and allowing an unsafe environment by engaging in and allowing criminal activity in the illegal sale, possession, and distribution of narcotics; Plaintiff's <u>14th Amendment rights to due process of law and equal protection of the law</u>, by Defendants refusing to allow Plaintiff to call witness during Disciplinary Hearing of Misbehavior Reports, refusing to modify excessive SHU time, refusing to investigate criminal acts against Plaintiffs and retaliatory acts against Plaintiff, and intentionally disregarding Plaintiffs grievance complaints and disposing of them and falsely claiming that they were not received, and not filing them if they were of a serious nature against staff, or intentionally filing them late even though they were received in time in order to dismiss them as untimely filed, and confining Plaintiff to extremely excessive SHU time unfairly for retaliation and not related to legitimate penological interests.

—13—

All resulting in Plaintiff's hardships, injuries, pain, and suffering.

WHEREFORE, Plaintiff requests judgement in his favor against all Defendants in an amount sufficient to compensate him along with punitive damages for the violation of his Constitutional rights, physical pain, and mental anguish suffered by him due to the deliberate indifference and intentional misconduct and crimes of the Defendants, but in no event less than $300,000.00, together with his attorneys fees and costs, and such additional relief as the Court may deem just and proper.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: 26 December 2006

Respectfully submitted,

*Herbert Burgess*
Herbert Burgess #93A3237
Attica Correctional Facility
639 Exchange Street, P.O. Box 149
Attica, New York 14011-0149
Plaintiff Pro Se

- 14 -

I declare under penalty of perjury that on this 26 day of December, 2006, I will deliver this Complaint to prison authorities to be mailed to the Pro Se office of the United States District Court for the Southern District of New York.

Herbert Burgess

Herbert Burgess #93A3237
Plaintiff Pro Se