**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

HERBERT BURGESS,
                              Plaintiff,

    v.                                        No. 07-CV-204
                                                    (GTS/DRH)

BRIAN FISCHER; ROBERT K. WOODS;
JAMES T. BEZIO; T. ASHLAW; MICHAEL
EDDY; LOUISE TICHENOR; PAT
JOHNSON; and SGT. MARTIN,
                              Defendants.

---

**APPEARANCES:**                                 **OF COUNSEL:**

HERBERT BURGESS
Plaintiff Pro Se
93-A-3237
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

HON. ANDREW M. CUOMO               CHRISTOPHER W. HALL, ESQ.
Attorney General for the                   Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Herbert Burgess ("Burgess"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, eight DOCS employees, violated his constitutional

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

rights under the First, Eighth, and Fourteenth Amendments. Compl. (Docket No. 1). Presently pending are defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Docket No. 61. Burgess opposes the motion. Docket No. 64. For the following reasons, it is recommended that defendants' motion be granted.

### I. Background

The facts are related herein in the light most favorable to Burgess as the non-moving party. See subsection II(A) infra.

At all relevant times, Burgess was incarcerated at Sing Sing ("Sing Sing") and Upstate ("Upstate") Correctional Facilities. Compl. (Docket No. 1) ¶ 3. Burgess complained of multiple constitutional violations during his incarceration primarily related to (a) threats to plant narcotics in Burgess' possession, (b) receiving inadequate medical treatment after an assault, and (c) the denial of adequate protection after exposing the illicit drug ring and being labeled a snitch.

### A. Threats

On or about April 25, 2005, during a routine search of burgess' cell, defendant Eddy confiscated fifty postage stamps, legal documents, and medical records. Compl. ¶¶ 26; Docket No. 61-5 ¶¶ 33-35. Additionally, during the Summer of 2005, Eddy attempted to force Burgess to participate in an illegal drug ring selling narcotics to inmates on Eddy's behalf. Compl. ¶ 17; Docket No. 61-5 ¶ 52. Burgess refused to participate in the narcotics ring, reported the illegal activity to the Drug Enforcement Administration ("DEA"), and was

thereafter charged with various disciplinary violations, harassed, and assaulted. Compl. ¶¶ 18-20. This included an assault by Eddy and threats on August 23, 2005. Id. ¶ 21; Docket No. 61-5 ¶ 37.

On August 24, 2005, defendant Bezio instituted disciplinary charges against Burgess after learning that Burgess not only refused to sell the narcotics but also informed the DEA of the narcotics ring. Compl. ¶¶ 31-32; Docket No. 61-5 ¶ 52. Bezio failed to protect Burgess from other inmates and corrections officers and allowing Burgess to be assaulted, robbed, and extorted.[2] Compl. ¶ 32; Docket No. 61-5 ¶ 54.

### B. Medical Treatment

On June 29, 2005, Burgess was examined by the medical department for an injury sustained to his left eye in an altercation with another inmate. Compl. ¶ 34; Docket No. 61-5 ¶¶ 7. Defendant Tichenor gave Burgess a cursory examination and did not provide additional care even though there was a dent in Burgess' eye socket. Docket No. 61-5 ¶ 7, 24. A few weeks later, Burgess underwent x-rays of his injured eye but was still denied any further medical care. Id. ¶ 10; Compl. ¶ 34. After examining the eye and reviewing the x-rays, defendant Johnson indicated that the eye's orbital bone was fractured but that there was nothing he could do about the dent in Burgess' eye socket. Compl. ¶¶ 35-36. Tichenor stated that the denial of treatment was due to Burgess' propensity continually to complain about the treatment he received from the medical staff. Id. ¶ 34.

---

[2] On March 8, 2006, defendant Martin was assigned to investigate an inmate assault on Burgess due to Burgess' refusal to seek narcotics for Eddy. Compl. ¶¶ 27-28.

3

### C. Request for Protection

On October 13 and 14, 2005, defendant Ashlaw called Burgess an informant in the presence of all other inmates housed in Burgess' cell block intending for other inmates to cause Burgess harm. Compl. ¶¶ 23-24; Docket No. 61-5 ¶ 57. Ashlaw told the inmates that Burgess "was a rat and that [he] would be wagging his tail out of [the cell block] because he snitched on everyone." Compl. ¶ 24; Docket No. 61-5 ¶ 57. Burgess was moved to another building but still wrote to defendant Woods seeking protection and corrective action for Ashlaw's actions. Compl. ¶ 33; Docket No. 61-5 ¶ 57.

In addition to this letter, Burgess wrote Woods multiple times after November 9, 2005, explaining to Woods that his health and safety were compromised as corrections officers often subjected him to excessive force. Docket No. 61-5 ¶ 51. Woods also condoned the excessive sentence Burgess was serving in the Special Housing Unit (SHU)[3] and allowed the narcotics ring to flourish in the prison. Compl. ¶ 38.

### D. State Court Actions

On November 25, 2005, approximately one year prior to filing the present action, Burgess filed a complaint in the Northern District of New York. <u>Burgess v. Tichenor</u>, No. 05-CV-1476 (LEK/GHL) (hereinafter "<u>Burgess I</u>"). On June 1, 2006, Burgess entered into a stipulation of discontinuance and dismissal of that action. Docket No. 61-3. By that

---

[3]SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (1995). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. <u>Id</u>. at pt. 301.

4

stipulation, Burgess agreed to:

> discontinue[] th[e] action with prejudice and without damages . . . discharg[ing] and releas[ing] the defendants . . . of any and all claims, demands, or causes of actions, known or unknown, now existing or hereafter arising, whether presently asserted or not, which relate in any way to the subject matter of this action, and further agrees to . . . not commence in any court . . . any litigation or claims against the defendants . . . pertaining to the underlying facts, circumstances or incidents that gave rise to the instant action . . . .

Id. ¶ 1. Additionally, Burgess agreed to terminate three other pending lawsuits. Id. ¶ 5(a)(1), (2), (4); see also Docket Nos. 61-4 & -5 (stipulations of discontinuance and dismissal for the two pending Northern District cases). In Burgess I, Burgess named Tichenor, Woods, and Bezio as defendants. See Docket No. 61-3 at 1. Burgess alleged there that (1) Ashlaw called him a "rat" in the cell b; (2) Eddy stole his personal property, attempted to force Burgess to participate in a narcotics ring, threatened Burgess after Burgess refused, and allowed assaults against Burgess; (3) medical personnel refused to treat his broken eye socket despite receiving x-rays and the visible dent; and (4) false disciplinary charges were instituted against Burgess and which resulted in excessive confinements in SHU. Docket No. 61-5 ¶¶ 7, 33-35, 37, 52, 54, 57.

## II. Discussion

In his complaint, Burgess claims defendants violated his (1) First Amendment rights by filing retaliatory disciplinary charges, (2) Eighth Amendment rights by being deliberately indifferent to his serious medical needs, and (3) Fourteenth Amendment rights by subjecting him to an excessive SHU sentence. Defendants move for judgment on the

5

pleadings asserting that the Court should enforce the stipulations of discontinuance and dismissal entered in Burgess I.

### A. Legal Standard

"After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." Allan v. Woods, No. 05-CV-1280 (NAM/GJD), 2008 WL 724240, at *1 (N.D.N.Y. Mar. 17, 2008) (citing Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir. 1983)). "The test for evaluating a [Fed. R. Civ. P.] 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, "a 'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." Gilfus v. Adessa, No. 5:04-CV-1368 (HGM/DEP), 2006 WL 2827132, at *3 (N.D.N.Y. Sept. 30, 2006) (citing De Jesus v. Sears, Roebuck & Co. 87 F.3d 65, 70 (2d Cir. 1996) (internal quotations omitted)). Thus, dismissal is only warranted if it appears, beyond a reasonable doubt, that the non-moving party cannot prove a set of facts which would support his or her claim or entitle him or her to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, __ F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).

### B. Prior Stipulations of Dismissal

Generally, a stipulation of dismissal with prejudice represents an agreement formed with unambiguous language which is "deemed a final adjudication on the merits." Israel v. Carpenter, 120 F.3d 361, 366 (2d Cir. 1997); see generally Nemaizer v. Baker, 793 F.2d 58, 60-61 (2d Cir. 1986) (explaining the preclusive effect of a stipulation which includes a dismissal with prejudice). For *res judicata* purposes, such stipulations serve to bar claims arising in subsequent litigation which were, or could have been, asserted in the prior complaint. Israel, 120 F.3d at 366. These stipulations are strongly favored by the courts and are strictly enforced to preserve and protect alternative dispute resolution strategies

and the integrity of the litigation process.  Purcell v. Town of Cape Vincent, 281 F. Supp. 2d 469, 473 (N.D.N.Y. 2003) ("When a district court 'so orders' a stipulat[ion] . . . [t]he clearest obligation is a duty to enforce that [which the district court] has approved.").

Settlement agreements and resulting stipulations of discontinuance are analyzed under contract law.  Geller v. Branic Int'l Realty Corp., 212 F.3d 734, 737 (2d Cir. 2000). However, the importance of enforcing such agreements in the context of settlements carries greater force than for ordinary contracts because of the interests in efficient dispute resolution and the management of litigation.  See Purcell v. Town of cape Vincent, 281 F. Supp. 2d 469, 473 (N.D.N.Y. 2003) (Munson, J.). Thus, a determination of defendants' motion depends upon the language and interpretation of any settlement agreements and stipulations of discontinuance in Burgess' prior cases.

**1. Woods**

Woods, Bezio, and Tichenor were named as defendants in Burgess I.  Docket No. 61-3 at 3.  In that action Burgess alleged that Woods failed to protect Burgess from assaults by corrections officers and other inmates at Upstate and also alleged incidents of deficient medical care including treatment of his left eye.  Burgess I Compl. (Docket No. 61-5) ¶¶ 51, 58, 61, 62.  Here, Burgess alleges that Woods failed properly to supervise an investigation into Burgess' complaint that a corrections officer at Upstate assaulted him in March 2006, three months before Burgess signed the stipulations on June 1, 2006. Here, Burgess further alleges that Woods knew that Burgess was the target of assaults by staff and inmates while at Upstate. Compl. ¶ 29.

Burgess I, as well as two other actions filed by Burgess, were dismissed by the

agreements of the parties in which the defendants agreed in each action to transfer Burgess to another facility in return for his agreement to dismiss the actions. See Stipulations of Discontinuance (Docket No. 61-3). All the stipulations were signed by Burgess and by counsel for the defendants and all were "so ordered" by the district court judges. Id. Burgess is thus bound by the terms and scope of those stipulations.

With the exception of Burgess' claim in this action that Woods improperly refused to reduce his confinement in SHU, all other claims against Woods here were resolved by the stipulation in Burgess I. Burgess is bound by that stipulation, he cannot now pursue the claims here after stipulating to their dismissal and receiving the benefit of his agreement, and defendants' motion as to all claims against Woods other than the claim regarding Burgess' SHU sentence should be granted.

As to the claim against Woods regarding Burgess' SHU sentence, that claim was not specifically asserted in Burgess I or in either of the other two actions. However, Burgess' SHU confinement commenced prior to June 1, 2006 when Burgess signed the stipulation in Burgess I. The explicit language of the stipulation specified that the stipulation governed "any and all claims, demands, or causes of actions, known or unknown, now existing or hereafter arising, whether presently asserted or not, which relate in any way to the subject matter of this action . . . ." Docket No. 61-3 at ¶ 1. Burgess was confined in SHU at the time he signed the stipulation, his confinement in SHU was an integral part of his claims, and Woods was named as a defendant in the case. In these circumstances, Burgess' agreement that he was dismissing claims "known or unknown, now existing or hereafter arising, whether presently asserted or not, which relate in any way to the subject matter of this action" suffices to bring within its scope Burgess' SHU confinement claim against

9

Woods. Defendants' motion as to this claim should be granted as well.

Accordingly, defendants' motion as to Woods should be granted in its entirety.

### 2.  Bezio and Tichenor

The claims against Bezio in Burgess I included instituting false disciplinary charges against Burgess related to drugs, failing to investigate Burgess' claim that a corrections officer was attempting to force him to sell narcotics and otherwise failing to protect him from harm in the facility. Burgess I Compl. ¶¶ 52, 54. The claims against Tichenor in Burgess I included failure to treat Burgess' vision, wrist, and foot problems in June 2005 and failure to respond to the x-ray results for Burgess' left eye in July, 2005. Id. ¶¶ 7-10, 14, 25, 26, 28. These claims include all claims asserted against Bezio and Tichenor in this action. Thus, all claims here against these two defendants are barred by the stipulat[ion in Burgess I and defendants motion here as to Bezio and Tichenor should be granted in its entirety.

### 3. Ashlaw, Eddy, Johnson, and Martin

The question presented by defendants' motion requires a slightly different analysis as to Ashlaw, Eddy, Johnson, and Martin as, although the conduct of each was alleged in Burgess I, none of these four defendants were named as defendants therein. Burgess alleged in Burgess I that Ashlaw harassed Burgess on June 29, 2005and identified Burgess as an informant in Burgess' cell block on October 13 and 14, 2005. Burgess I Compl. ¶ 57. In Burgess I, Burgess also alleged that Eddy stole Burgess' postage stamps and legal and

10

medical documents on April 25 and July 16, 2005; threatened Burgess and assaulted him on August 23, 2005; and coerced Burgess to sell narcotics. Burgess also alleged in burgess I that he was denied medical treatment for the fractured orbital bone of his left eye, the allegation which he directs at Johnson in this case. Finally, Burgess alleges here, but not specifically in Burgess I, that Martin failed properly to investigate an assault by an unknown corrections officer in March 2006. Burgess I Compl. ¶¶ 7-10, 14, 25-28, 33-38, 52, 67 ; Compl. ¶¶ 27-28 (Martin).

These four defendants were not themselves parties to Burgess I. See Docket No. 61-3. They cannot, therefore, claim the benefit of the stipulation as named parties to that action. See generally Williams & Sons Erectors, Inc. v. South Carolina, 983 F.3d 1176, 1181 (2d Cir. 1993); Trepel v. Dippold, No. 04 Civ. 8310(DLC), 2006 WL 3054336, at *6 (S.D.N.Y. Oct. 27. 2006). However, the stipulation in Burgess I specifically states that Burgess "discharges and releases the defendants and the State of New York, including its . . . employees . . ." of all claims, whether asserted therein or not, related in any way to the subject matter of Burgess I. Docket No. 61-3 at ¶ 1 (emphasis added). There appears no dispute in the record that at the time of the stipulation, each of the four defendants here was an employee of New York State. Thus, as with the individuals named as defendants in Burgess I, the stipulation operated to release any state employee, including these four defendants, from any cause of action then existing. See Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 268 (2d Cir. 1997) (strictly enforcing terms of settlement agreement and release).

Each of the claims herein against these four defendants existed at the time of the stipulation in Burgess I Accordingly, by virtue of the Burgess I stipulation, Burgess released

each of these four defendants and is now estopped from asserting the causes of action brought herein against those defendants. Defendants motion on should, therefore, be granted as to Ashlaw, Eddy, Johnson, and Martin in its entirety.

### 4. Fischer

During his deposition in this action, Burgess stated his agreement to dismissal of Fischer as a defendant. Burgess Dep. (Docket No. 61-4) at 3-5. It appears that based on Burgess' statement, defendants seek an order dismissing the claims against Fischer. Defs. Mem. of Law (Docket No. 61-6) at 1-2. However, under Fed. R. Civ. P. 41(a)(1)(A)(ii), a claim or party may be dismissed voluntarily by a plaintiff only in a written stipulation filed with the Court. Defendants cite no other authority for dismissal based on Burgess' statement and none appears from the record. It does not appear that Burgess' statement of agreement to dismiss the claims against Fischer was ever reduced to writing. Accordingly, no sufficient basis exists to dismiss Fischer from this action based on the statement by Burgess at his deposition and dismissal on this ground should be denied.

However, it appears that Fischer is identically situated to Ashlaw, Eddy, Johnson, and Martin under the terms of the stipulation in Burgess I. According to the complaint in this case, Fischer threatened Burgess with retaliation for Burgess filing complaints at Sing Sing when Fischer was Superintendent there in 2000, setting off "a chain reaction of events of Plaintiff being continually assaulted, threatened, and illegally confined by prisoner officials . . . ." Compl. ¶¶ 12-15,17, 21, 22, 27, 31, 32, 38. As with the other defendants, the claims against Fischer were known to Burgess and in existence at the time he signed the stimulation in Burgess I on June 1, 2006. Moreover, there is no dispute that Fischer was a

12

state employee during this period. Thus, Burgess' agreement in settling his claims in Burgess I that he released all state employees from any claims which could have been brought prior to June 1, 2006 serves to estop his claims here against Fischer. On this basis, then, defendants' motion should be granted as well as to Fischer.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for judgment on the pleadings (Docket No.61) be **GRANTED** in all respects and that judgment be entered in favor of all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 12, 2009
       Albany, New York

_David R. Homer_
United States Magistrate Judge